**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEITH STEWART,            :
                                    : Civil Action No. 12-346 (SDW)
            Petitioner,     :
                                     :
            v.               :        **OPINION**
                                     :
UNITED STATES,          :
                                     :
            Respondent.    :

**WIGENTON**, District Judge

Before the Court is Petitioner Keith Stewart's ("Petitioner" or "Stewart") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). The Government filed an Answer to Petitioner's Motion on January 14, 2013. (ECF No. 19.) For the reasons stated below, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

In 2007 and early 2008, Immigration and Customs Enforcement ("ICE") agents investigated a large drug network in Newark, New Jersey, which had distributed large quantities of heroin and cocaine. Intercepted communications from court-authorized wiretaps revealed that Petitioner and co-conspirator, Shedrick Crafton, were two members of the narcotics conspiracy, and that Stewart was the head of the narcotics ring responsible for distributing multiple kilograms of heroin and cocaine. (*See* Presentence Investigation Report ("PSIR") at ¶¶ 15-17.) Accordingly, Stewart and other members of the conspiracy were arrested on February 14, 2008,

and charged in a Superseding Criminal Complaint.   (*See United States v. Stewart*, Case No. 2:08-cr-346 (SDW) at ECF No. 6.)  A search warrant was also executed on February 14, 2008, at Petitioner's residence, and law enforcement officers recovered about 147 grams of heroin that were packaged for retail distribution.  (*See* PSIR at ¶¶ 43, 44.)  Petitioner was appointed counsel, Linwood A. Jones, Esq., to represent him at the initial appearance conducted on February 14, 2008.  (*See* Case No. 2:08-cr-346 (SDW) at ECF No. 8.)

The Government outlines that Stewart faced a significant sentence based on the nature of the criminal charges and Petitioner's criminal history.  For instance, Stewart was subject to a mandatory minimum sentence of 10 years, pursuant to 21 U.S.C. § 841(b)(1)(A), for the charge of conspiracy to distribute more than one kilogram of heroin and more than five kilograms of cocaine.  However, because Petitioner had two prior drug convictions, he faced a potential sentence as a career offender that could have resulted in a U.S. Sentencing Guidelines range of 360 months to life in prison.  (*See* PSIR at ¶¶89-94; U.S.S.G. § 4B1.1.)  Moreover, the Government had the discretion to file an enhanced penalty information with the Court before trial, which detailed Stewart's two earlier convictions, seeking a mandatory life sentence without release, pursuant to 21 U.S.C. § 841(B)(1)(a).  *See also* 21 U.S.C. § 851(a)(1).  (ECF No. 19, Resp't's Ltr. Br. at 3, 4.)

On April 23, 2008, the Assistant U.S. Attorney, Matthew E. Beck ("AUSA Beck"), sent Petitioner's counsel a plea agreement dated April 22, 2008, by facsimile (the "Plea Agreement").  The Plea Agreement included Sentencing Guidelines stipulations that would have resulted in an applicable Guidelines level of 34.  With a category VI criminal history, as indicated in Petitioner's PSIR at ¶ 94, the Plea Agreement offered Petitioner a Guidelines range between 262

to 327 months incarceration.  (See ECF No. 19-1, Declaration of Matthew E. Beck, AUSA, dated January 14, 2013 ("Beck Decl.") at ¶ 2, Exhibit A.)

Thereafter, on May 13, 2008, a Federal Grand Jury returned a two-count indictment against Stewart and other co-conspirators, charging Stewart with conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin, and possession with intent to distribute 100 grams or more of heroin.  On August 1, 2008, the Grand Jury returned a three-count Superseding indictment against Stewart, Crafton and another co-conspirator, charging Stewart with conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin, conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, and possession with intent to distribute 100 grams or more of heroin.  (See Case No. 2:08-cr-346 (SDW) at ECF Nos. 39, 50.)  At the August 7, 2008 arraignment of Petitioner and the other co-defendants on the Superseding Indictment, AUSA Beck stated on the record before the Court that if Stewart did not enter a plea sufficiently before trial, the Government would file an enhanced penalty information with the Court that would expose Petitioner to a mandatory life sentence.  AUSA Beck further reiterated on the record that he had  offered Petitioner and his counsel a "show and tell" in which the Government would clarify the charges, potential penalties and the overwhelming evidence against Petitioner.  (ECF No. 19-1, Beck Decl., Ex. B – August 7, 2008 Transcript at 14:18-15:10.)

A "show and tell" meeting was scheduled on October 16, 2008.  In a letter dated October 2, 2008, AUSA Beck confirmed that the Government would provide Petitioner with the types of proof to be offered at trial so that Petitioner would be "fully informed regarding the nature and strength of the Government's case" against Stewart.  (*Id*., Ex. C.)  The letter also referenced the outstanding Plea Agreement and stated that if Petitioner did not sign the Plea Agreement on or

3

before October 27, 2008, the Government would file an "Enhanced Penalty Information" that would result in a "statutorily mandated term of life in prison." (*Id*.)

On October 16, 2008, Stewart and his counsel, Jones, appeared at the U.S. Attorney's Office in Newark, New Jersey, for the "show and tell" with AUSA Beck and Timothy Carey, Special Agent with the ICE Homeland Security Investigations, also present at the meeting. Special Agent Carey attests that AUSA Beck provided Petitioner and counsel with a proffer letter to review and sign at the start of the "show and tell" meeting.  (ECF No. 19-2, Declaration of Timothy Carey, dated January 14, 2013 ("Carey Decl."), at ¶¶ 3, 4 and Ex. A.)  During the meeting, the Government explained the charges in detail to Stewart, as well as the potential statutory and Sentencing Guidelines penalties that Petitioner faced, making clear that Petitioner was looking at a mandatory life sentence if he went to trial.  (*Id*. at ¶ 5.)  Additionally, the Government fully explained the Plea Agreement, which provided a sentencing range of 262 to 327 months in prison, and would have resulted in the Government not filing an enhanced penalty information against Petitioner before trial.  Carey attests that Stewart remained silent throughout the "show and tell" meeting, but did not show any surprise or unfamiliarity with the Plea Agreement or its terms.  Further, when discussing the terms of the plea offer, the Government never stated that Petitioner had to cooperate with the Government in the investigation or prosecution of others in order to plead guilty. (*Id*. at ¶6.)

Finally, the Government discussed some of the overwhelming evidence against Petitioner at the "show and tell" meeting, which included the playing of numerous telephone calls that were intercepted by the Government via a court-authorized wiretap.  (*Id*., ¶¶ 7-9.)  The Government also disclosed to Petitioner for the first time that an individual known to Petitioner as "Jeff" had been cooperating with the Government and had been recording various incriminating meetings

4

with Stewart and certain heroin suppliers.  (*Id.*, ¶ 8.)  At the close of the meeting, the Government repeated to Petitioner that he needed to sign and return the Plea Agreement to the Government by October 27, 2008, or the Government would file an enhanced penalty information. (*Id.*, ¶ 11.)

On October 27, 2008, AUSA Beck sent Jones a letter confirming that if a signed Plea Agreement was not received by the end of the day, the Government would file an enhanced penalty information.  (ECF No. 19-1, Beck Decl., Ex. D.)  Petitioner never signed the Plea Agreement.[1]

On February 5, 2009, a federal grand jury sitting in Newark, New Jersey, returned a two-count Second Superseding Indictment ("Indictment") against Petitioner and his co-conspirator, Shedrick Crafton.  (ECF No. 19, Resp't Ltr. Br. at 7.)  Count One of the Indictment charged Petitioner and Crafton with participating in a conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and five or more kilograms of cocaine, contrary to 21 U.S.C. §§ 841(a), 841(b)(1)(A) and 846.  Count Two charged Stewart with distributing and possessing with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A).  (*Id.*)

On March 10, 2009, a nine-day jury trial commenced before this Court, with the jury returning a verdict of guilty on both counts.  (*See United States v. Stewart*, No. 2:08-cr-346 (SDW) at ECF Nos. 95, 120.)  On July 10, 2009, this Court sentenced Stewart to a prison term of 370 months with 10 years of supervised release.  (*Id.* at ECF Nos. 132, 137.)

Stewart appealed from his conviction and sentence, and on April 27, 2010, the United States Court of Appeals for the Third Circuit affirmed Petitioner's conviction and sentence. Stewart filed a motion for rehearing *en banc*, which was denied by the Third Circuit on May 24,

2010.  Stewart then filed a petition for a writ of certiorari before the United States Supreme Court, which was denied on February 22, 2011.  Thereafter, Petitioner timely filed this § 2255 Motion on January 13, 2012.

Petitioner raises various claims of ineffectiveness of counsel in support of his Motion.  In Claim One, Petitioner argues that he was denied effective assistance of counsel during the plea process.  Namely, Stewart argues that counsel did not conduct an independent investigation of the case necessary to fully inform Petitioner as to whether to plead guilty, nolo contendere, or not guilty.  Petitioner claims that counsel "did not seriously investigate, explore, or attempt to negotiate a favorable plea agreement," or keep Petitioner informed of "any opportunities for a favorable plea agreement."  He further contends that Jones did not convey to him the strength of the Government's case and the unlikelihood that Petitioner could prevail at trial.  Stewart also claims that counsel did not advise him that he could plead guilty without a plea agreement from the Government, and that such a timely plea before trial would likely have resulted in a 3-point reduction in his offense level under U.S.S.G. § 3E1.1 for "acceptance of responsibility," as well as reduce any enhancement to his sentence as a career offender.  Petitioner also argues that counsel "affirmatively misadvised" that the only benefit in sentencing would be a plea offer from the Government that required Petitioner to cooperate in the investigation and prosecution of others in the narcotics conspiracy.  (ECF No. 1, Motion at ¶¶ 22-33.)

In Claim Two, Petitioner contends that his trial counsel was ineffective because counsel did not inform Petitioner that he could request a bench trial on stipulated facts without waiving any defenses or challenges to his base offense level or total offense level at sentencing.  (*Id*. at ¶¶ 49-55.)

Petitioner further argues in Claim Three that his trial counsel was ineffective because counsel failed to move for dismissal of the indictment on the grounds that it was not presented or returned by the grand jury in open court; that counsel failed to make a motion to suppress evidence before trial; that counsel failed to investigate or present exculpatory evidence and testimony at trial, and failed to timely object to the unlawful admission of evidence by the prosecution; that counsel failed to request appropriate jury instructions or timely object to insufficient jury instructions; that counsel failed to timely object to improper argument by the prosecution on summation or to request curative instructions; that counsel was ineffective during sentencing; that appellate counsel failed to investigate or present the strongest issues on Petitioner's direct appeal; and that counsel "labored under an actual conflict of interest which adversely affected his performance during the pretrial, trial, sentencing and direct appeal process in this case."  Petitioner also claims that he is entitled to relief based on the cumulative effect of these errors.  (Id., ¶¶ 71-79.)

Finally, in Claim Four, Petitioner asserts that his 370-month sentence is subject to collateral attack because his prior convictions, used to enhance his sentence, have been vacated. (*Id*., ¶79B.)  It is worth noting that in his supporting Memorandum, Stewart admits that his state court post-conviction petition is still pending in the Superior Court of New Jersey, Law Division, County of Essex.  (ECF No. 1-4, Memorandum at 54-55.)  Thus, the prior convictions had not yet been vacated at the time he filed his § 2255 Motion.

The Government responded to the Motion on January 14, 2013, countering that Petitioner's claims lack merit.  (ECF No. 19, Answer.)  The Government initially argues that Stewart's claims of counsel errors fail to meet the standard for such ineffective assistance of counsel claims as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Moreover, the

7

Government contends that many of the claims asserted by Stewart are unsubstantiated and conclusory allegations.  (*Id.* at 9-14.)  The Government does admit, however, that Stewart's allegations concerning his counsel's performance during the plea process, though conclusory, show "potentially cognizable errors if substantiated."  (*Id.* at 16-17.)  Nevertheless, the Government questions the validity of Petitioner's claims based on the Certification of Linwood A. Jones ("Jones Cert.") (ECF No. 14), which refutes Stewart's allegations, as well as additional evidence from Special Agent Carey and AUSA Beck, which confirms significant information relating to the plea process that was provided to Stewart during the October 16, 2008 "show and tell" meeting.  The Government suggests that the "show and tell" most likely prompted communications between Jones and Stewart about the plea process and therefore, Stewart and Jones should be given the opportunity to supplement their prior submissions to the Court on these issues connected to the plea process.

Stewart filed a traverse to the Government's Answer on February 15, 2013.  (ECF No. 20.)  The traverse does not provide any additional sworn statements or other factual support for Petitioner's claims regarding his counsel's performance during the plea process.  Further, no supplemental certification has been received by Jones to date.

## **LEGAL STANDARD**

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, --- F.Supp.2d ----, 2013 WL 4538293, at * 9 (D.N. J. Aug. 26, 2013) (Simandle, J.) (citing *Booth*, 432 F.3d at 545–46).

## DISCUSSION

A.  Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI. In order to succeed on his claims alleging ineffectiveness of counsel, Stewart must satisfy the two prong test of deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (holding that "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice"). First, Stewart must show that his counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id*. at 687–688. Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must prove that there was "a reasonable probability that, but for counsel's

9

unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...."  *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).  "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Id*. at 788 (quoting *Strickland*, 466 U.S., at 690) (internal citations omitted).  In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different.  *Strickland* 466 U.S. at 694.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Virtually every act or omission of counsel would meet that test."  *Id*. at 693.

As stated above, Petitioner must show both deficiency of performance and prejudice to prevail on an ineffective assistance of counsel claim under *Strickland*.  Thus, given the interplay between *Strickland* and § 2255, if Petitioner shows both elements of *Strickland*, he satisfies the requirements of § 2255.  *U.S. v. Travillion*, --- F.3d ----, 2014 WL 3029837, * 3 (3d Cir. Jul. 7, 2014).  However, in a claim of ineffective assistance of counsel, which has both a deficiency and prejudice prong, the court may address the prejudice prong first "[i]f it is easier to dispose of an

10

ineffectiveness claim on the ground of lack of sufficient prejudice." *Id*. at * 4 (citing *Strickland*
466 U.S. at 697).

1. *Ineffectiveness During Plea Process*

In his first claim, Stewart argues that his counsel was ineffective because he did not
conduct an independent investigation of the case necessary to fully inform Petitioner as to his
plea options.  In particular, Stewart claims that Jones did not convey to him the strength of the
Government's case and the unlikelihood that Petitioner could prevail at trial.  Stewart also claims
that Jones did not advise him that he could make an open guilty plea before trial that would
likely have resulted in a 3-point reduction in his offense level under U.S.S.G. § 3E1.1 for
"acceptance of responsibility," as well as reduce any enhancement to his sentence as a career
offender.  Finally, Stewart argues that Jones "affirmatively misadvised" that the only benefit in
sentencing would be a plea offer from the Government that required Petitioner to cooperate in
the investigation and prosecution of others in the narcotics conspiracy.  (ECF No. 1, Motion at ¶¶
22-33.)

The Third Circuit has held that, in certain circumstances, a habeas petitioner states a
plausible claim for ineffective assistance of counsel when he asserts that his counsel failed to
advise of the possibility of entering an open plea, which would have reduced his sentence.
*United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005).  In *Booth*, the defendant rejected a plea
offer from the Government and countered with a different offer.  *Id*. at 544.  The Government
declined the counteroffer and informed Booth's counsel that it would only allow Booth to plea if
he "would give a proffer concerning his own culpability and the criminal involvement of any
other participants" in the crime.  *Id*.  Because Booth did not want to cooperate against any of the
other defendants, negotiations broke down, he proceeded to trial, and he was sentenced to 90

months in prison.  *Id*.  After exhausting his appeals, Booth filed a § 2255 petition, alleging his counsel was ineffective, because he was not informed about all possible plea options, including an "open plea," which would not have required Booth to cooperate with the government.  *Id*. at 543.  The district court denied the motion without holding a hearing, but the Third Circuit reversed, concluding that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" and that Booth raised a sufficient allegation that he would have accepted an "open plea" and was entitled to an evidentiary hearing on the merits.  *Id*. at 545, 549. The Third Circuit stated:  "We must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct" and the court found that Booth likely would have received a reduction in sentence for accepting responsibility.  *Id*. at 548–49.  The Third Circuit ordered the district court to hold an evidentiary hearing on the question.  *Id*. at 550.

Like *Booth*, Stewart argues that he would have accepted an open plea rather than going to trial, in the hope of a reduced sentence for acceptance of responsibility.  However, Jones disputes Stewart's allegations that Stewart would have pled guilty rather than go to trial.   In his certification to this Court, Jones states that throughout his visits with Stewart while Stewart was confined at the Passaic and Essex County Jails, Stewart had insisted that the Government was setting him up in retaliation for an earlier conviction that was overturned on appeal.  Stewart also was adamant that this case was similar to the earlier case he had beaten.  (ECF No. 14, Certification of Linwood A. Jones, Esq. ("Jones Cert.") at ¶¶3, 4.)  Jones further avers that he fully explained the Government's plea offer to Stewart, but Stewart rejected it.   Jones also discussed the status of Stewart's co-defendants, who eventually started pleading out, and explained to Stewart that a guilty plea would give him the benefit of point reductions and

possible additional downward departures on his sentence.  Jones told Stewart that, depending on his criminal history at the time, Stewart could expect a 20-year prison term if he pled guilty. However, Stewart responded that he "did not intend to plead guilty to something he did not do, and in any event, at his age 20 years was equivalent to life."  (*Id*. at ¶ 5.)

Jones states that during this time, Stewart "was intent on going to trial and there was nothing that [Jones] could do  [to] dissuade him from this position."  (*Id*. at ¶ 6.)  Stewart never sought to convey a counter-offer to the Government, nor did Stewart ask for a lower sentence in exchange for a guilty plea.  During this time, Stewart's co-defendants started to plead out of the case, so Jones continued to engage in the necessary research and prep work for trial given Stewart's insistence against pleading guilty.  However, Jones did discuss the case with the AUSA, who offered to provide Stewart with a "show and tell" so Stewart could grasp the magnitude of the evidence against him.  (*Id*.)

After the "show and tell," Stewart was provided with about 1460 pages of the telephone transcripts of the electronic surveillance of his telephone calls and those of his co-defendants, as well as additional documentary evidence the Government had against him for use at trial. During this time, Jones also discussed with Stewart the different cooperating witnesses who may be testifying against Stewart if a trial occurred, and the strength and weaknesses of their potential testimony. Nevertheless, despite Jones' assurances that the AUSA was ensuring that all evidence was being produced, Stewart remained resolute in his belief that the Government was retaliating against Stewart because the Government lost a prior trial as a result of their misconduct in failing to provide exculpatory evidence, and he continued to resist a guilty plea.  (*Id*. at ¶¶ 7, 8 and 9.)

Jones' certification is buttressed by the sworn statements submitted by AUSA Matthew Beck and Special Agent Timothy Carey, which discuss in significant detail the plea process that

13

began with the Government's offer of a plea agreement in April 2008, through the "show and tell" occurring on October 16, 2008 and the October 27, 2008 letter concerning the Government's plea agreement deadline.  Beck, Carey and Jones all confirm that the April 2008 plea agreement was discussed in detail with Stewart at the October 16, 2008 "show and tell" meeting.  (ECF No. 19-2, Declaration of Timothy Carey ("Carey Decl.")  at ¶ 6; ECF No. 14, Jones Cert. at ¶6.)  The Government also informed Stewart that, given his criminal history, he faced a potential mandatory life sentence if he did not plead guilty, or at the very least, 20-years in prison.  (ECF No. 19-2, Carey Decl. at ¶ 5.)  The Government further apprised Stewart that the plea agreement specifically provided a three-level reduction for acceptance of responsibility for pleading guilty.  Moreover, the Government never told Stewart that he had to cooperate with the Government in investigations and prosecutions against others in order to receive the acceptance of responsibility credit.  (*Id*. at ¶ 6.)

At the "show and tell," the Government also showed Stewart a sampling of the overwhelming evidence against Petitioner and informed Stewart that it was extremely likely that he would be convicted if he went to trial.  The Government concluded the meeting by telling Stewart he had two weeks to accept the plea agreement, and if not done by that date, the Government would file an information mandating a life sentence if Stewart was convicted.  (Id. at ¶¶ 7-11.)

In light of these affirmations by the Government and Stewart's counsel, this Court finds no ineffective assistance of counsel relating to the plea process.  It is evident that Jones adequately conveyed to Stewart the plea offer made by the Government, and that Stewart was made aware of the very strong evidentiary case the Government had attained against him. Moreover, Stewart expressed a steadfast refusal to plead guilty from the beginning of Jones'

representation, based on Stewart's belief that the Government was simply avenging a prior loss against Stewart due to misconduct in failing to produce exculpatory information. Stewart's adamant rejection of a plea for a substantial period of time, even after being apprised of the overwhelming evidence amassed against Stewart for use at trial, undercuts Stewart's weak contention that he would have opted for an open guilty plea if it had been explained to him by counsel.

Indeed, Stewart is hard pressed to show, let alone establish prejudice where the evidence by counsel affirmations makes clear that Stewart had no intention of pleading guilty. Furthermore, there was little difference in a potentially lesser sentence between the Government's plea agreement and an open guilty plea at trial. The plea agreement offered a three-level reduction for acceptance of responsibility for pleading guilty similar to that which he would have received had Stewart made a timely plea before trial under U.S.S.G. § 3E1.1. Moreover, the Government did not require that Stewart cooperate against others in exchange for the plea agreement. Accordingly, Petitioner fails to demonstrate that he would have entered an open plea, let alone that his attorney unreasonably failed to inform him to enter into an open plea under the circumstances.

This Court also finds the Third Circuit's decision in *United States v. Gonzalez–Rivera*, 217 F. App'x 166 (3d Cir. 2007) to be somewhat instructive here. In that case, the Third Circuit affirmed the district court's denial of a § 2255 petition for an evidentiary hearing where the petitioner had argued that his counsel was ineffective for failing to pursue a plea agreement. *Id.* at 168. The Third Circuit distinguished the case from *Booth* because the petitioner in *Gonzalez–Rivera* had maintained his innocence throughout the proceedings and was unwilling to plead guilty, unlike Booth, who had engaged in plea negotiations. *Id.* at 170. The Third Circuit found

15

that Gonzalez–Rivera's "contention that he would have accepted a guilty plea is belied by the evidence below" and that, because Gonzalez–Rivera was unable to point to "any specific benefit that he would have received for his plea" the "alleged prejudice that he may have suffered as a result is far too speculative." *Id.* The court also noted that Gonzalez-Rivera's counsel actually had informed him of the option to plead guilty without cooperation, unlike Booth's counsel, who did not. *Id.*

District courts in this Circuit have followed *Gonzalez–Rivera* and denied evidentiary hearings when (1) the petitioner claimed his or her attorney never informed him or her about an open plea, (2) the petitioner maintained his or her innocence throughout the proceedings, and (3) the record belied the contention that the petitioner would have accepted a plea deal. *See Mines v. U.S.*, Civ. No. 10-5163, 2013 WL 6187185, *5-6 (D.N.J. Nov. 26, 2013); *Hernandez v. U.S.*, Civ. No. 13-4943, 2013 WL 5331055, *4-5 (D.N.J. Sep. 23, 2013); *Donna v. United States*, Civ. No. 10–1607, 2011 WL 322636, at *7-8 (D.N.J. Jan. 31, 2011); *Darby v. United States*, Civ. No. 10–1437, 2010 WL 4387511, at *6-7 (D.N.J. Oct. 28, 2010); *United States v. Jackson*, Civ. No. 09–5255, 2010 WL 1688543, at *4 (E.D.Pa. Apr. 27, 2010).

This case is similarly distinguishable from *Booth*-and analogous to *Gonzalez–Rivera*, and the other cases cited above. As observed above, Stewart expressed no desire to plead guilty throughout this case, and he had rejected the Government's plea offer, making no counter offers because he believed he could win this case based on his victory in an earlier case brought by the Government against him. There is simply nothing in the record of this case to indicate that Stewart would have entered an open guilty plea after rejecting the Government's plea deal, especially where the open plea had no greater benefit to Stewart than the Government's plea agreement. Indeed, Stewart's assertion otherwise is patently unbelievable. Therefore, this Court

16

concludes that Stewart has not demonstrated that he suffered prejudice under *Strickland*, and this claim must be denied as "far too speculative" given the record in this case.   *See Gonzalez–Rivera*, 217 F. App'x at 170.   Moreover, because Stewart cannot show prejudice even if counsel had failed to inform him about an open guilty plea, this Court will not hold an evidentiary hearing on this claim.   (*See* Section B of this Opinion, infra.)   The present record establishes nothing more than Stewart's hindsight regret at not having entered a plea of guilty in a case where an open plea would have necessarily militated toward a very lengthy sentence in any event, which Stewart showed no inclination to accept.   *See Mines,* 2013 WL 6187185 at *6.

### 2.  *Failure to Request a Bench Trial.*

Stewart next alleges that his counsel was ineffective for failing to move for a bench trial on stipulated facts.   He claims that he would have benefited from a bench trial in various ways, such as being able to "obtain District Court and appellate review of the sufficiency of the evidence," being able to raise "any defenses at his sentencing," and being able to get a reduction in his offense level for acceptance of responsibility.   (ECF No. 1, Motion at ¶¶ 48-69.)

Ultimately, Stewart's assertion that he would have fared better with a bench trial is wholly conclusory, and the decision to opt for a bench trial is a strategic one that is not grounds for post-conviction relief.   *See Mehta v. U.S.*, Civ. No. DKC 11-2828, 2014 WL 546685, *9 (D.Md. Feb. 7, 2014).

Moreover, Petitioner cannot establish that he was prejudiced by having a jury trial as compared to a bench trial.   The testimony and evidence would have been the same in a stipulated bench trial as was presented at the jury trial, and that evidence was overwhelmingly against Stewart.   As the Government aptly argues, there were numerous recordings of phone calls and meetings that showed Stewart was responsible for the distribution of many kilograms of heroin

17

and cocaine.   Further, the testimony of two witnesses who were Stewart's heroin suppliers confirmed that they regularly provided Stewart with large amounts of heroin.   This evidence "proved that Stewart [was] clearly entitled to an aggravating role enhancement" as "the leader and head of this large Newark, New Jersey-based narcotics network."   (ECF No. 19, Gov't's Answer at 12 (citing the PSIR at ¶ 57.))   Thus, Stewart would have been in the same position at sentencing as he was at the conclusion of the jury trial, facing a sentence as a career offender, with only a reduction in the Guidelines range for acceptance of responsibility.

Therefore, this claim is likewise denied because Stewart has not established prejudice, namely, that a stipulated bench trial would have led to a different result, as required under *Strickland*.

3. *Failure to Move for Dismissal of Indictment for Not Being Returned in Open Court*.

Stewart next argues that his trial counsel was ineffective for his failure to file a motion to dismiss the Indictment on the ground that it was not returned in open court.   (ECF No. 1, Motion at ¶ 71.)   Stewart's claim is meritless.

An indictment may only be returned "to a magistrate judge in open court." Fed.R.Crim.P. 6(f).   A presumption of regularity attaches to a grand jury's proceedings and the defendant has the burden of demonstrating that an abuse has occurred.   *See United States v. Bunty*, 617 F. Supp.2d 359, 372 (E.D.Pa. 2008); *see also United States v. Brettkreutz*, 977 F.2d 214, 217 (6th Cir. 1992).   Here, there is no indication in the record that the indictment was not presented in open court and Stewart presents no evidence to support his claim otherwise. Therefore, this Court need not consider the merits of Stewart's claim and he is not entitled to relief under § 2255 on his corresponding claim of constitutionally ineffective assistance of counsel.   *See e.g.*, *Westerlund v. U.S.*, Civ. No. 1:13-CV-654, 2014 WL 2763595, *3 (W.D.

Mich. Jun. 18, 2014); *Samas v. U.S.*, Civ. No. 3:12-cv-00151 (VLB), 2014 WL 1653219, *9 (D. Conn. Apr. 23, 2014); *United States v. Skinner*, Civ. No. 1:06cv1091-DCB, 2009 WL 2030427, *5 (S.D. Miss. Jul. 14, 2009) (holding that unsubstantiated claim that Rule 6(f) requirements were not followed does not satisfy petitioner's burden under *Strickland*); *Kalani v. United States*, Civ. No. 02-Civ-8663, 2002 WL 31453094, *9-10 (S.D.N.Y. Oct. 31, 2002) (rejecting petitioner's claim in 2255 petition that his indictment was not returned in open court in the presence of the grand jury where petitioner failed to provide any "specific factual allegations tending to show that the Indictment was returned in violation of the Local Rules in this District and Rule 6(f) ..." and rejecting related claim of ineffective assistance of counsel for the same reason).

       4. *Remaining Claims Are Unsubstantiated*.

Stewart's remaining allegations under Claim Three[2] of his motion asserting ineffective assistance of counsel are conclusory and unsubstantiated. Stewart provides no factual detail to support these various claims, and consequently, they must be summarily rejected. *See U.S. v. Thomas*, 2211 F.3d 430, 437 (3d Cir. 2000) (holding that vague and conclusory § 2255 claims are subject to summary dismissal); *United States v. Robinson*, 467 F. App'x 100, 102 (3d Cir. 2012) (same).

Stewart also alleges that he is entitled to relief under § 2255 based on the cumulative errors of his counsel in violation of his Sixth Amendment right to constitutionally effective counsel. (ECF No. 1, Motion at ¶ 79.) The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Thornburg v. Mullin*, 422 F.3d 1113,

1137 (10th Cir. 2005) (relying on *Donnelly*, 416 U.S. at 643); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

As discussed above, this Court finds no merit to Petitioner's claims for individual errors. As such, there is no basis or merit for § 2255 relief based upon an alleged accumulation of errors that did not exist.

B.  <u>No Further Evidentiary Hearing Required</u>

Stewart claims that he is entitled to an evidentiary hearing on his claims asserting ineffective assistance of counsel.  Although a district court has discretion on whether to hold an evidentiary hearing, § 2255 dictates that a hearing shall occur "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989).  As this Court has determined, based on the motion and record provided, including the Certification of Stewart's trial counsel (ECF No. 14), that Stewart is not entitled to § 2255 relief on any of the claims asserted, he is not entitled to an evidentiary hearing.  *See* 28 U.S.C. § 2255(b); *see also United States v. McCoy*, 410 F.3d 124, 131–32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).  Indeed,  "[a] hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably

incredible." *Allen v. U.S.*, Civ. No. 13-5186 (JBS), 2014 WL 1959520, *2 (D.N.J. May 14, 2014) (citations omitted).

However, if the petitioner's allegations raise an issue of material fact, a hearing must occur. *U.S. v. Patton*, 502 F. App'x 139, 141 (3d Cir. 2012) (citing *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir.1992) (citations omitted). Consequently, a court abuses its discretion if it fails to conduct an evidentiary hearing when the record is inconclusive on whether the petitioner is entitled to relief. *Booth*, 432 F.3d at 546 (citations omitted).

Here, the Government concedes that Stewart should be given the opportunity to submit additional information regarding his counsel's performance during the plea-bargaining process. (ECF No. 19, Answer at 16.) Specifically, the Government suggests that the "show and tell" most likely prompted communications between Jones and Stewart about the plea process and therefore, Stewart and Jones should be given the opportunity to supplement their prior submissions to the Court on these issues connected to the plea process.

In his § 2255 motion, Stewart claims that Jones (1) did not try to negotiate a favorable plea agreement or keep Stewart apprised of negotiations and opportunities for a favorable plea; (2) did not inform Stewart that he could make an open guilty plea without a plea agreement; (3) did not advise Stewart that he could obtain a credit for acceptance of responsibility by pleading guilty; (4) did not advise Stewart that a plea could reduce his career offender sentence; and (5) did not properly inform Stewart that he could receive a reduction of sentence without cooperating with the Government. (ECF No. 1, Motion at ¶¶ 21-47.) All of these claims involve the conduct and performance of counsel during the plea process.

The Supreme Court recently held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Missouri v. Frye*, --- U.S. ----, ----, 132 S.Ct. 1399, 1407–

21

08, 182 L.Ed.2d 379 (2012).  Thus, a defendant is plainly entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, --- U.S. ----, ----, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012).

In this case, however, there is no evidence that Jones was ineffective in his representation of Stewart during the plea bargaining process.  Jones' Certification confirms that Jones discussed the Government's plea agreement with Stewart shortly after it was offered.  Jones further attests that he discussed with Stewart the benefits of a plea before trial, namely, point reductions for acceptance of responsibility and the possibility of additional adjustments on his sentence.  (ECF No. 14, Jones' Cert. at ¶ 5.)  In addition, Jones and Stewart participated in the October 16, 2008 "show and tell" prompted by the Government to inform Stewart as to the magnitude of the case and overwhelming evidence against Stewart.  (*Id*. at ¶ 6.)   Finally, Special Agent Carey attests that neither he nor AUSA Beck ever told Stewart at the show and tell meeting that he had to cooperate with the Government if he accepted the Government's plea agreement.  (ECF No. 19-2, Carey Decl. at ¶ 6.)  Thus, the record before the Court shows that Jones did continually inform Stewart during the plea-bargaining process, advising him of the Government's plea agreement and the evidence the Government had against Stewart if the matter went to trial.  Jones also avers that he informed Stewart that he could obtain a credit for acceptance of responsibility by pleading guilty as well as possibly reducing his career offender sentence.  Finally, there is no evidence that Stewart was told he had to cooperate with the Government if he accepted the plea agreement.  Therefore, based on Jones' Certification and Carey's Declaration, Stewart is not entitled to an evidentiary hearing because this record shows that Stewart was advised of the consequences of going to trial and the Government plea deal, which he rejected.

As to whether Jones informed Stewart about an open plea, the Court also finds no basis for granting an evidentiary hearing.  Again, Jones states in his Certification that Stewart was steadfast in his desire not to plead guilty throughout the process.  Jones also affirms that he told Stewart that Stewart would get a sentencing reduction for pleading guilty.  As this Court observed above, Stewart expressed no desire to plead guilty throughout this case, and he had rejected the Government's plea offer, making no counter offers because he believed he could win this case based on his victory in an earlier case brought by the Government against him.  There is simply nothing in the record of this case, especially in light of Jones' Certification, to indicate that Stewart would have entered an open guilty plea after rejecting the Government's plea deal, especially where the open plea had no greater benefit to Stewart than the Government's plea agreement.  Thus, even if Jones had not informed Stewart of an opportunity to enter an open guilty plea, the evidence shows that Stewart would not have agreed to do so.  Under all of these circumstances, Stewart simply cannot satisfy the prejudice prong under *Strickland*.  Therefore, an evidentiary hearing is not warranted here.

This Court further rejects the Government's concession that an issue of fact exists on this issue that cannot be resolved from the given record.  Notably, the Government seems to allow only that there is an open issue about what Jones may have told Stewart after the "show and tell" meeting.  But Jones' Certification confirms that he spoke to Stewart throughout the process and that Stewart continued to insist that he could beat the charges because he had done so previously.  This Court finds that there is little that Jones could add in an evidentiary hearing that would dispel his averments concerning Stewart's adamant refusal to plead before trial even after the show and tell meeting and Jones' discussions concerning the strength of the Government's case against Stewart.  This Court again emphasizes that the present record establishes nothing more

23

than Stewart's hindsight regret at not having entered a plea of guilty in a case where an open plea would have necessarily militated toward a very lengthy sentence in any event, which Stewart showed no inclination to accept. *See Mines*, 2013 WL 6187185 at *6. Accordingly, for all of the reasons cited above and in Section A of this Opinion, this Court denies Stewart's request for an evidentiary hearing.

C. Claim that Stewart's Prior Convictions Were Vacated

Finally, in Claim Four of his motion, Stewart contends that his 370-month sentence is subject to collateral attack because his prior convictions, which were used to enhance his sentence, have been vacated. (ECF No. 1, Motion at ¶ 79B.) However, Stewart admits that his state court petitions for post-conviction relief are still pending. Therefore, because these prior convictions have not been vacated, this claim must be rejected as premature.

## CERTIFICATE OF APPEALABILITY

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## CONCLUSION

For the reasons set forth above, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.   An appropriate Order follows.


July 21, 2014                                    _*s/Susan D. Wigenton*_____
                                                SUSAN D. WIGENTON
                                                United State District Judge

---

[1] The Government notes that it chose not to file an enhanced penalty information seeking a mandatory life term, but did, in its discretion, file an enhanced penalty information before trial seeking a twenty-year mandatory minimum sentence.  (*See* Case No. 2:08-cr-346 (SDW) at ECF No. 104.)

[2] Stewart generally alleges that counsel failed to make a motion to suppress evidence before trial; that counsel failed to investigate or present exculpatory evidence and testimony at trial, and failed to timely object to the unlawful admission of evidence by the prosecution; that counsel failed to request appropriate jury instructions or timely object to insufficient jury instructions; that counsel failed to timely object to improper argument by prosecution on summation or to request curative instructions; that counsel was ineffective during sentencing; that appellate counsel failed to investigate or present the strongest issues on Petitioner's direct appeal; and that counsel "labored under an actual conflict of interest which adversely affected his performance during the pretrial, trial, sentencing and direct appeal process in this case."  (ECF No. 1, Claim Three at ¶¶ 71-78.)